UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

Kevin Bennett and                                          Case No.: 16-74588-ast
Lisa Marie Giudice,                                        Chapter 13

                                Debtors.
-----------------------------------------------------------X

## ORDER DIRECTING DISGORGEMENT
## OF A PORTION OF DEBTORS' COUNSEL'S FEES

      On October 3, 2016, Debtors Kevin Bennett and Lisa Marie Giudice ("Debtors") filed a chapter 13 bankruptcy petition. [dkt item 1] Marianne DeRosa was appointed as the Chapter 13 Trustee (the "Trustee").

      Charles Wallshein of the law firm Tirelli & Wallshein, LLP ("Counsel")[1] electronically signed the petition on behalf of Debtors, which included Schedules and a Statement of Financial Affairs (the "Petition" and the "SOFA"). Included at page 44 of the Petition is a Disclosure of Compensation, which discloses that Counsel's usual rate for cases such as this is $6,500.00 and that prior to the Petition he received $5,500. However, the SOFA reflects that Debtors paid Counsel $4,000.00 prior to the petition date for bankruptcy services, plus $25.00 for credit counseling and $310 for the filing fee. [dkt item 1]

      On October 3, 2016, Counsel filed a Statement Pursuant to Local Rule 2017-1, dated October 3, 2016, stating, *inter alia*, that Counsel is the attorney for Debtors and that his usual rate for cases such as this is $6,500.00. [dkt item 2]

---

[1] On the petition Counsel's law firm is Charles Wallshein Law LLC. Subsequent to the filing of the petition, apparently the name of Counsel's law firm was changed to Tirelli & Wallshein, LLP. *See* Counsel's Supplemental Response to Order to Show Cause. [dkt item 52]

1

Also on October 3, 2016, Counsel filed a chapter 13 plan on behalf of Debtors (the "Plan").   [dkt item 3]

On November 16, 2016, Alterna Funding 1, LLC ("Alterna") filed an objection to confirmation of the Plan, asserting, among other things, that the Plan does not provide for payment in full of a tax lien held by Alterna against Debtors' residence.   [dkt item 16]

On December 1, 2016, the Trustee filed a motion to dismiss the case and objected to confirmation of the Plan because, among other things, the Plan does not provide for full repayment to all secured creditors, is not adequately funded, Debtors have failed to commence making plan payments, and Debtors have failed to provide the Trustee with certain documents (the "Motion to Dismiss").   [dkt item 19]

On January 18, 2017, Counsel on behalf of Debtors filed a First Amended Chapter 13 Plan (the "First Amended Plan").   [dkt item 22]

On January 19, 2017, the Court held a hearing on the Motion to Dismiss and plan confirmation.   Counsel, Debtors, and the Trustee appeared at the hearing.   The Court adjourned the Motion to Dismiss and plan confirmation to February 16, 2017, and directed Debtors to be current on documents due the Trustee and the Court by January 30, 2017, and current on plan payments by February 9, 2017.

On February 8, 2017, Linda M Tirelli of the law firm of Tirelli & Wallshein filed a Notice of Appearance as counsel on behalf of Debtors.   [dkt item 23]

On February 15, 2017, Debtors filed a Second Amended Chapter 13 Plan (the "Second Amended Plan").   [dkt item 26]

On February 16, 2017, the Court held a hearing and adjourned the Motion to Dismiss and plan confirmation to March 9, 2017.

On February 22, 2017, Alterna filed an objection to the Second Amended Plan, again asserting among other things, that the Second Amended Plan does not provide for payment in full of a tax lien against Debtors' residence held by Alterna. [dkt item 29]

On March 9, 2017, the Court held an adjourned hearing, at which Counsel, the Trustee, and counsel for Alterna appeared. The Court adjourned the Motion to Dismiss and plan confirmation to April 20, 2017.

On April 18, 2017, Counsel on behalf of Debtors filed a letter with the Court representing that Counsel has submitted all of the documents due to the Trustee. [dkt item 34]

On April 18, 2017, Counsel on behalf of Debtors filed a Third Amended Chapter 13 Plan (the "Third Amended Plan"). [dkt item 36]

On April 18, 2017, the Court entered an Order adjourning the April 20, 2017 hearing to May 9, 2017, and directing Debtors to provide certain outstanding schedules and documents to the Court and Trustee by May 4, 2017, and that Debtors' failure to comply with the Order would result in this case being dismissed (the "Compliance Order"). [dkt item 38]

On May 9, 2017, the Court held an adjourned hearing, at which Debtors, the Trustee, and appearance counsel on behalf of Debtors ("Appearance Counsel") appeared. The Trustee represented that Debtors have not complied with various terms of the Compliance Order. Appearance Counsel represented that he was not aware of Debtors' alleged non-compliance. Debtors represented they have attempted to comply with the Compliance Order, were not satisfied with Counsel's representation of them in their bankruptcy case, they have never met with Appearance Counsel, and that they would like to retain a new attorney. Despite Debtors' noncompliance but in consideration of Debtors' effort to confirm a chapter 13 plan, their dissatisfaction with Counsel, and the failure of enrolled Counsel to appear at the May 9, 2017

3

hearing, the Motion to Dismiss was adjourned to June 15, 2017 at 11:30 a.m.

On May 16, 2017, this Court issued an Order to Show Cause (the "OSC"), directing Counsel to file a detailed billing statement as to all services rendered and fees paid in the above-captioned case by no later than June 8, 2017, and setting out why Counsel's fee for this case is reasonable under the Bankruptcy Code and Rules or, if not, whether Counsel should disgorge fees received in connection with this case. [dkt item 41] The OSC set a hearing for June 15, 2017.

On June 7, 2017, Debtors' Counsel filed an affidavit outlining the documents and information they assert were provided to the Trustee (the "Compliance Affidavit"). [dkt item 47]

On June 14, 2017, Counsel filed an opposition to the OSC (the "OSC Opp."). [dkt item 48]

The Court adjourned the June 15 hearing to July 13, 2017; at the July 13 hearing, Ms. Tirelli, Mr. Wallshein, Krista Preuss from the Trustee's office and Debtors appeared.   Debtors stated they did not oppose dismissal of this case.   The Court allowed Counsel and Debtors to file supplemental letters concerning Counsel's fees, and requested the Trustee file a letter outlining the extent to which Debtors had complied with her request for documents and information.

On August 2, 2017, Debtors filed a letter opposing the allowance of Counsel's fees. [dkt item 51]

On August 3, 2017, Counsel filed a supplemental opposition to the OSC (the "Supp. Opp.") which includes a detailed billing statement (the "Billing Statement") and Counsel's engagement letter, the latter of which reflects that Counsel typically charges $6,500.00 for a case such as this (the "Agreed Fee") but accepted $5,500.00 up front with the $1,000.00 balance to be paid through the chapter 13 plan (the "EL"). [Dkt item 52]   The EL is dated September 29,

2016, thus pre-petition, and outlines a distinction Counsel draws between base matters, being those covered by the Agreed Fee, and non-base matters, being those for which Counsel would bill hourly and thus in addition to the $6,500.00 Agreed Fee. The list of non-base matters that Debtors agreed to by signing the EL is extensive, including matters such as defending motions for relief from stay, defense of motions to dismiss post confirmation, objections to claims, and "all motion practices." Counsel's Supp. Opp. notes that while Counsel's Billing Statement did not separate out what the EL defines as base fee work from non-base fee work, Counsel "accepts the entire invoice to be considered part of the base fee."

On August 4, 2017, the Trustee filed a letter outlining the extent to which Debtors had and had not complied with her request for documents and information, which included her disagreement with the Compliance Affidavit. [dkt item 53]

On December 11, 2017, this Court entered an Order dismissing this case and directing the Clerk's office to hold the case open pending the Court's decision on the OSC. [dkt item 54]

***Standard for analysis of reasonableness of fees***

The Eastern District of New York Local Bankruptcy Rule ("LBR") 2090-2(a) requires, *inter alia*, that the attorney of record for a debtor "or an attorney acting of counsel to such attorney and who is knowledgeable in all aspects of the case, shall appear on behalf of the debtor in every aspect of the case, including, but not limited to . . . defending an adversary proceeding, contested matter, motion, or application filed against the debtor during the pendency of the bankruptcy case."

LBR 2090-2(e) provides, *inter alia*, that an "attorney of record for a debtor who fails or refuses without reasonable excuse to represent the debtor in any aspect of the case, including but not limited to … defending an adversary proceeding, contested matter, motion, or application

filed against the debtor . . . may, after notice and a hearing, be sanctioned pursuant to this rule and may be ordered to disgorge fees paid in connection with the case pursuant to Bankruptcy Rule 2017."

Section 329 of the Bankruptcy Code "authorizes the Court to determine the reasonableness of compensation" paid or agreed to be paid "for representing the interests of a debtor in connection with a bankruptcy case." *In re Chin Kim*, 2012 WL 3907490, at *3 (Bankr. E.D.N.Y. Sep. 6, 2012); *In re Moukazis*, 479 B.R. 247, 248 (Bankr. E.D.N.Y. 2012); *In re Conroy*, No. 8-16-71943-ast, 2017 Bankr. LEXIS 3775, at n.2 (Bankr. E.D.N.Y. Oct. 31, 2017), *modified*, No. 8-16-71943-ast, [dkt item 57] (Bankr. E.D.N.Y. Nov. 22, 2017) (citing *In re Datta*, No. 8-08-72740-AST, 2009 Bankr. LEXIS 1856, 2009 WL 1941974, at *9 (Bankr. E.D.N.Y. July 2, 2009)).

Specifically § 329(a) provides:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C § 329(a).

Bankruptcy Rule 2016(b) implements § 329(a) by requiring a debtor's attorney to file the statement required by that section within 14 days after the order for relief, *In re Chatkhan*, 496 B.R. 687, 692–93 (Bankr. E.D.N.Y. 2012) (CJ Craig), and specifically provides:

> Disclosure of Compensation Paid or Promised to Attorney for Debtor. Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as

> the court may direct, the statement required by §329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity.… A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

FED. R. BANKR. P. 2016(b).

Numerous courts, including this court in *Chatkhan*, have held that "[f]ailure to comply with § 329 and Bankruptcy Rule 2016(b) is grounds to deny all fees and costs sought by counsel." *Chatkhan*, 496 B.R. at 695; *see also Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 721 (6th Cir. 2001) ("To ensure [protection of both creditors and debtors against overreaching attorneys], bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules"); *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1997); *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995) ("Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees"); *In re Chez*, 441 B.R. 724, 731 (Bankr. D. Conn. 2010) ("Indeed, it has long been the practice in [the Second Circuit] to deny compensation to counsel who fail to comply with the disclosure provisions....") (alterations in original) (quoting *In re Laferriere*, 286 B.R. 520, 526–27 (Bankr. D. Vt. 2002) quoting *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 469 (2d Cir. 1981)).

Further, disgorgement is not limited to circumstances of willful misconduct by an attorney: "While a more 'technical breach' of the attorney's obligations under the Bankruptcy Code and the Bankruptcy Rules may not warrant denial of all compensation, it is clear that a finding of willfulness is not required; '[d]isgorgement may be proper even though the failure to [comply with the Code and Rules] resulted ... from negligence or inadvertence.'" *Chatkhan*, 496

B.R. at 695 (quoting *Vergos v. Mendes & Gonzales PLLC (In re McCrary & Dunlap Const. Co., LLC)*, 79 Fed. Appx. 770, 779 (6th Cir. 2003)).

Bankruptcy Rule 2017 expressly authorizes the court to analyze and determine whether any payment made to a debtor's attorney is excessive, whether such payment is made before the order for relief (Rule 2017(a)), or after the order for relief (Rule 2017(b)), so long as such services are "in any way related to the case."  FED. R. BANKR. P. 2017.

In a case filed under chapter 13, Bankruptcy Code Section 330(a)(4)(B) applies, and provides that "the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."  11 U.S.C. § 330(a)(4)(B).

To determine reasonableness of compensation, Bankruptcy Code Section 330(a)(4)(B) directs the court to consider the "other factors" referenced in Section 330(a)(3).  In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) …; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

8

The burden of proof on the reasonableness of the legal fees charged rests with Counsel. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *In re Bolton*, 43 B.R. 598, 600 (Bankr. E.D.N.Y. 1984); *In re Henry*, No. 09-79579-ast, 2011 Bankr. LEXIS 2465, at *10 (Bankr. E.D.N.Y. June 22, 2011). This Court has an obligation to examine the propriety of attorney's fees, regardless of whether an objection is raised. *In re Thorn*, 192 B.R. 52, 55 (Bankr. N.D.N.Y. 1995). In addition, an attorney's billing practice is not limited to writing down how much time was spent on each given task; "when the issues are not complex and the process is straightforward, an attorney is expected to exercise 'billing judgment', and is encouraged to reduce its customary fees in appropriate circumstances to reflect a less substantial expenditure of the attorney's time." *Id*. at 56 (internal citations omitted) (citing *Hensley*, 461 U.S. at 437).

This Court has required partial disgorgement of debtor's counsel's fees on various occasions. *See, e.g., Conroy*, 2017 Bankr. LEXIS 3775, at *13 (disgorging fees for counsel's failure to discharge basic duties as chapter 11 counsel and failure to provide benefit to debtor for chapter 13 work)*; Chin Kim*, 2012 WL 3907490, at *5 (court required disgorgement of fees in part as a result of counsel's failure to fully disclose fee arrangement with debtor); *In re Zambrano*, Case No. 13-73155-ast [dkt item 46] (Bankr. E.D.N.Y. Mar. 6, 2014) (court disgorged $2,000 of debtor's counsel's fees in chapter 7 case converted to a chapter 13 case).

*Reasonableness of Counsel's fees*

Here, in spite of conflicting disclosures, Counsel and Debtors agree that Counsel was actually paid $5,500.00 for fees and $310.00 for the chapter 13 filing fee. The failure of this case does not appear to be based on Debtors not having enough income to confirm a plan. Debtor Dr. Giudice is a self-employed podiatrist who earned in excess of $100,000 per year, partly in

her individual name and partly through her wholly owned entity[2]; together, Debtors apparently had approximately $165,000 per year of gross income. Debtors did not have a mortgage on their home, as debtor Mr. Bennett inherited it from his mother. OSC Opp. Para 3. The primary problem in this case was Debtors not providing the Trustee with monthly operating reports, profit and loss statements and bank statements from which the Trustee, creditors and the Court could ascertain the sources and reliability of Debtors' income, expenditures therefrom, and the viability and confirmability of a chapter 13 plan.

Debtors through Counsel filed multiple sets of schedules; the amounts in the schedules constantly fluctuated, which only served to muddle the ability to ascertain Debtors' capacity to fund a plan. Debtors' initial Schedule I/J, filed October 3, 2016, reported combined monthly income of $3,950.55 (which excluded Dr. Giudice's income from her entity), expenses of $3,137.58, and monthly net income available to fund a plan of $812.97. [dkt item 1] However, Debtors' Amended Schedule I/J, filed January 18, 2017, reported combined monthly income of $8,585.97 (including Dr. Giudice's income from her entity), expenses of $5,080.58, and monthly net income available to fund a plan of $3,505.39. [dkt item 21] Debtors' further Amended Schedule I/J, filed April 18, 2017, reported combined monthly income of $10,202.36 (including Dr. Giudice's income from her entity), expenses of $5,530.58, and monthly net income available to fund a plan of $4,671.78 [dkt item 35]. These differ greatly from each other and, with the exception of the last amendment, substantially varied from what Counsel believed when they first took this case, being that Dr. Giudice's income was $135,000 per year and Mr. Bennett's was $30,000 per year, and that Debtors should have had significant disposable income to fund a

---

[2] Rockaway Foot Care LLC.

plan. OSC Opposition, pp. 1-2. [dkt item 48] In fact, Debtors' Third Amended Plan, filed 7 months into this case, called upon Debtors to pay $4,671.78 starting in May 2017. [dkt item 36].

Counsel attributes most of the difficulties and delays in their handling of this case to accurately reporting Dr. Giudice's income and expenses as she was a self-employed podiatrist who maintained an entity through which she provided podiatry services, and that she also received Medicaid payments in her personal name. In Counsel's OSC Opposition it stated:

> Dr. Bennett's [sic] accountant was not able and was not engaged to produce monthly or quarterly statements for her practice. I spoke with the accountant and he told me that he prepared operating statements for the business only, and not for the income she received personally in her individual name from Medicaid.

[dkt item 48, para 23]   Counsel acknowledges that a breakdown in their relationship with Debtors occurred at some point; Counsel attributes this at least in part to what Mr. Wallshein called "sticker shock" at Debtors realizing they would have to pay creditors $4,671.78 per month through a chapter 13 plan given the amount of income they enjoyed.

Debtors, instead, attribute the failure of this case to Counsel's handling of the case and lack of preparation for hearings, and insist that they consistently provided Counsel with everything they were asked to provide. [July 13, 2017 hearing; dkt item 51] Debtors assert that they were "lied to several times" by Counsel. [dkt item 51]

Thus, there were three primary problems in this case that bear on the reasonableness of Counsel's fees: (1) contravention of LBR 2090-2(a), when they sent an unprepared Appearance Counsel who was clearly not "knowledgeable in all aspects of the case…" to the May 9, 2017 hearing, when Debtors' problems with the Trustee were well known[3]; (2) Counsel spending

---

[3] Counsel later explained that Mr. Wallshein had an urgent family matter that did not allow him

11

excessive amounts of lawyer time on what were clearly accountant issues; and (3) Counsel filing income and expense schedules, which clearly did not match what they understood from the outset to be the state of Debtors' income and expenses.

*The time spent on services*

The accounting issues in this case needed to be resolved by an accountant not by lawyers, especially given the Trustee's concerns about the accuracy of the reporting of Debtors' income and expenses. Debtors employed an accountant pre-petition, but either chose not to have them provide the information required by the Trustee, including operating reports, or they chose not to undertake that work. Still, it should have been apparent to Counsel by mid-January 2017, being six weeks after the Trustee filed her Motion to Dismiss and around the time Counsel filed Debtors' second of four amended schedules I/J [dkt item 21], that without an accountant and better reporting of financial information, this case would not result in a confirmed plan. Mr. Wallshein billed only approximately 3 of his 17.83 hours after that, but Ms. Tirelli billed the bulk of her 10.50 hours thereafter. A large portion of the time billed was for bookkeeping and calculating income and expenses; yet Counsel in their OSC Opp. and Supp. Opp. did not assert they had particular experience or knowledge in such work. As for their legal assistant Ms. Giorgi, she logged 4.6 hours, but the bulk of that time appears to be secretarial work (receive and scan various documents to trustee portal), which should have been absorbed in lawyer overhead and not separately charged, especially not at her rate of $200.00 per hour.

*The rates charged for services*

The Court is concerned with Counsel's fee structure in the EL, by which it separates

---

to attend on May 9, and Ms. Tirelli was going to attend but then she had a conflict, leading to their decision to send an unprepared Appearance Counsel.

services which it will provide at a base rate of $6,500 from work it will additionally bill at the hourly rate of $500 per hour. While this may not technically violate the scope of Local Rule 2090-2's requirement that an attorney of record for a debtor or a knowledgeable appearance counsel "shall appear on behalf of the debtor in every aspect of the case…," this Court's general observation, of the hundreds of chapter 13 cases filed in this district every year, is that a chapter 13 debtor is highly unlikely to have access to an extra several thousand dollars for her or their attorney to address issues such as those carved out from the base rate in the EL. Further, given that the legal issues presented by these Debtors at the time Counsel quoted their $6,500 fee were simply not that complicated, the rate itself is on the high end of rates this Court generally sees in chapter 13 cases; again, here, there was no residential mortgage to address, and Debtors had just a handful of creditors, and the issues concerning how to accurately report Debtors' income and expenses appeared to be largely of an accounting nature.   Additionally, the EL does not provide that Counsel will perform services on behalf of Debtors of an accounting nature, either at the base rate or the non-base rate, and even if the EL contemplated such services, Counsel has not provided evidence that its fee of $500 per hour for accounting services is reasonable.

*Additional Section 330(a)(3) factors*

As for the remaining Section 330(a)(3) factors, once it became apparent or should have become apparent to Counsel that the central issues were for an accountant to handle, any additional work on separating Debtors' income from expenses should have stopped; if Debtors chose not to have their accountant undertake this work, Counsel could have simply so advised the Court and the Trustee, at which time the case could have been dismissed much earlier and with less work undertaken. Similarly, if Debtors simply opposed paying their creditors the amount of net income available, Counsel could have simply so advised the Court and the

Trustee, at which time the case could have been dismissed much earlier and with less work undertaken. Thus, any work by Counsel after mid-January 2017 was not necessary to the administration of or beneficial toward the completion of this case.

As for whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed, the Court did note several entries by Mr. Wallshein that could have been undertaken by the paralegal, but did not note much overlap between his work and that which was charged by Ms. Tirelli.

*Conclusion*

On balance, Counsel did not meet its burden of proof that $5,500 for fees was reasonable under the applicable criteria.   Certainly, no counsel can guarantee success of a case when it is undertaken, but the fee allowed must be reasonable for the services actually rendered as they were rendered.   The Court has reviewed the docket sheet in this case, the hearings held, the detailed billing statements, and responses to the OSC of Counsel and Debtors. Based on all applicable criteria, this Court will limit Counsel's fee to $4,000.00 as a reasonable fee, plus the expenses of the filing fee and credit counseling, and requires Counsel to refund $1,500 to Debtors, and to do so within 21 days of entry of this Order.

Accordingly, it is therefore

**ORDERED**, that Counsel shall disgorge $1,500.00 to Debtors within **twenty-one (21) days** of entry of this Order, and shall docket an affidavit or affirmation of compliance within **ten (10) days** thereafter; and it is further

**ORDERED**, that this case shall be closed upon the filing of Counsel's affirmation of compliance.



Dated: January 30, 2018
Central Islip, New York

_____
**Alan S. Trust**
**United States Bankruptcy Judge**